1431 57 Christina Smith administrator for the estate of Margaret Stallard deceased versus Erie County Sheriff's Department et al. Perkins Township Board of Trustees et al. Oral argument as follows 15 minutes for the plaintiff 15 minutes to be shared by the defendants. Mr. Traska for the plaintiff appellant. Thank You Mr. Ford good morning your honors my name is Peter Traska and it is my privilege to represent Christina Smith and the estate of her mother. I have asked Mr. Ford to reserve three minutes of my time for rebuttal. We believe that this court should reverse and remand for two primary reasons the first being that this is a case of sua sponte summary judgment having been entered by the district court on an issue that was not briefed by either party. I actually pinpointed it looking through the summary judgment motion it's page 13 this goes into the court as a deliberate indifference motion for summary judgment and there is no discussion by either of parties as to whether we're talking about if the deliberate indifference standard is should it be arising under the Eighth Amendment should it be arising under the 14th Amendment where we're actually at clearly after this court's decision pardon me decision in Aldini is under the Fourth Amendment objective reasonable standard. Now which constitutional envelope if you will which constitutional set of protections applies is driven by the status of the person this is it's important to note that Miss Stollard was not even a pretrial detainee at the time of these events she was merely an arrestee anybody in this courtroom can become an arrestee at any time without probable cause she had not had her probable cause hearing so this is a person in the criminal justice system who should be receiving the maximum protections allowed by the Constitution because she'd never had her moment before a neutral magistrate to evaluate the circumstances of her arrest. Now I've researched a good number of issues I've never seen the phrase Twilight Zone to describe the murkiness of an area of law I believe that no although the court came to the correct decision this this shouldn't be reviewed under the deliberate indifference standard it should be reviewed for Fourth Amendment reasonableness so the court came to a correct conclusion there but then reviewed the record without the benefit of either party having briefed this and again you have to for the non-moving party you have to oppose the motion that is made not the that's that's the burden that you have under seal attacks to oppose summary judgment. So on the unique circumstances of the law being by every description a Twilight Zone for the court to have decided this motion without the benefits of the parties considering this evidence through a Fourth Amendment analysis that that would be grounds for remand by itself. Now secondly let's assume you know that I give the the appellee credit for noting that it is a it's an opposition to say we want you to remand because the standard I understand that. Applying the correct standard I find it difficult to explain how the plaintiff's corrections officer expert this is Mr. Leach there is no reference in the district court's opinion to his testimony. Now his testimony again if the touchstone here is objective reasonableness there isn't any reason to cast about for... The distinction you're drawing is between a free citizen to whom the Fourth Amendment would unquestionably apply and someone who is being detained has been arrested and is being detained but hasn't had a pretrial detention hearing of any kind and how exactly do you draw that distinction? I mean what's your best authority for saying that puts somebody in the Fourth Amendment category? That's that's Aldini your honor that is clearly Aldini has established that until the time of the probable cause hearing somebody who is you know at that time a pretrial detainee even afterwards but until that time Aldini says unmistakably and Aldini goes into some analysis about whether that's a clearly established right as well and the the holding is that it is clearly established that one is protected by the to come back to that point the the case out of a different panel of this court the the Burgess case a couple years after Aldini, Burgess I would say confuses things a little bit further because after painstakingly breaking down the reasoning in Aldini and saying oh sure this is a Fourth Amendment analysis what's an issue of first impression maybe second impression because Burgess touched on it a little bit and Burgess a guy got roughed up while in police custody he had both an excessive force claim and a deprivation of medical care claim for the injuries caused by the excessive force so the Burgess court breaks down how this is a Fourth Amendment analysis not a 14th Amendment analysis then inexplicably goes to deliberate indifference when talking about the deprivation of medical care so I think that highlights what had been observed by this court in Aldini that this is a truly confusing area of the law Burgess is the only case that I think either party has found in any jurisdiction considering the question of deprivation of medical care for an RSD for a pretrial detainee who hasn't even had a probable cause hearing so I hate to leave you with that but that is the the state of the law for for where we're at now and to me that that highlights the importance of when the trial court identified this issue the correct thing to do would have been to say and that their case law from this jurisdiction it's the Kistner versus Califano and the the Yashin case both say that rather than grant summary judgment on an issue not briefed by the parties the thing to do is to give the parties I think one of the cases says ten days notice but the thing to do is to not decide it on the court's own motion essentially but to give the parties a chance to to weigh in in this area of the law I think that's particularly important because there is such a lack of case law on deprivation of medical needs now under either standard administrative code says and the jail zone policies repeat this a preliminary health screening shall be completed by health trained personnel on all prisoners at the time of booking the the county defendants have admitted they couldn't possibly comply with that again that's their policy that's the administrative code and that's picked up explicitly in Mr. Leach's opinion which is not commented on by the trial court so this is not just a matter of well you know we can't look to the the regulation to give us something like negligence per se you're talking about objective reasonableness there's no there's no screening shall be performed by medically trained personnel not a doctor but by somebody who's medically trained I don't need medical training to figure out that an empty prescription bottle of Xanax that was filled the day before well a what is your where in the record do we find it not empty nearly empty that's nurse Scroggie noticed that there was a the vial was filled and I forget if it's the 30th or the 31st but it was no more than two days prior to the time the nurse Scroggie gets there on New Year's Day she finds that this is a very recently filled prescription and the vial is almost empty she notices this right away because she's a medically trained person it isn't enough for the the jailers to say well we didn't have any training on that our policy was to wait until the medically trained personnel showed up that's that is not how it works if if you are keeping somebody in custody without doing that medical screening you are in direct violation of what the standard is under revised code and what the what our expert testimony has given us as what is supposed to happen at the time that somebody is booked they couldn't do any medical screening because they weren't trained to do it well with that your honors I'm just about out of my time if there are no more questions I would Tresca good morning please the court and counsel Mel Lute on behalf of the Perkins Township defendants that would be sergeant Cusser and chief Claymar are you dividing your time evenly we are I'm taking seven minutes your honor my colleague is taking eight minutes I have the arresting officer and so the conduct of my client relative to the plaintiff plaintiff's decedent is from the time she's picked up sitting in some person's car until she is conveyed to the jail personnel of the co-defendant and consequently the law in the Sixth Circuit relative to the standard needed to assess my clients conduct is very clear the murkiness that counsel talks about if there is any it doesn't really apply to Perkins Township because we're the arresting officer and if we go back to Phelps versus a Phelps versus Coy Aldini those cases really the Phelps case deals with the arresting officer whereas Aldini and Burgess really get into what happens in that booking process what happens after that person is conveyed by law enforcement to the prisoner prison authority and so the Fourth Amendment analysis employed by the trial court relative to Perkins Township is very clear and that reasonableness that objective reasonableness that we apply to the arresting officer is because that arresting officer obviously is dealing with a more exigent circumstances split-second decisions the things that are needed to protect that officer because their circumstances are much different than in a jail setting where you have more time to deliberate and things of that nature so with respect to that Fourth Amendment analysis pertaining to Perkins Township that's very clear. Counsel made reference to the absence of any citation to Mr. Leach's testimony in the court's decision granting summary judgment again just for clarification Mr. Leach gave testimony specific to the jail and not as to my client so he never weighed in on the serious medical need issue as it might apply to Perkins Township in fact there really was no competent expert evidence before the trial court adverse to my client on that issue and finally this denial of medical care it really breaks down to whether she had a serious medical need that was evident and the Sixth Circuit in Burgess addressed an issue really far more egregious where a man a prisoner was actually roughed up fractured eye socket in a concussion but had superficial injuries that were visible and the court in that case said that the law enforcement personnel aren't doctors when they looked at the guy he looked like he had a few scrapes and bruises but he was all right now subsequent CT scan revealed fracture and concussion but the court in that case is not going to take an after the fact assessment like a CT scan and hold the officers responsible for that in this case Miss Stollard after she died there was an autopsy done the toxicology screen came back with no alcohol but the toxicologist who testified in this case indicated that that doesn't mean she didn't have alcohol on board at the time she was arrested or at the time she was booked it very well could have metabolized by the time the autopsy was performed so like in Burgess it would be improper for the court to hold the law enforcement officer sergeant Cusser in my case or the prison booking personnel responsible for something that was later found in an autopsy a serious medical need is about objective signs indicating an obvious need for medical assistance and that simply wasn't the case here and subjectively with regard to Cusser he does precisely what you would want an officer to do he finds a woman on socks are wet she has no shoes on she's disoriented he takes her to the jail pursuant to police policy where she can be observed because she is giving off all the signs of intoxication including smelling of alcohol and so everything lined up precisely to support the conduct of the officer at that time if there are no questions from the panel thank you I am Teresa Grigsby here on behalf of the Erie County defendants there are really just two issues that I'd like to discuss with you today the first is whether or not the evidence in the record creates a fact question on whether Margaret Stallard presented or exhibited signs of a serious medical need because if she did not then the officers actions in placing her in a holding cell and periodically monitoring her would not constitute a violation of the Constitution regardless of the amendment under which we analyze the case plaintiffs offer three... The opposing counsel says that it violates the procedures that the prison in the county had in place that there was a requirement that there be a medical evaluation as I understand him that there's a requirement that there's a medical evaluation regardless of whether there's any obvious need. The minimum standard in question here is standard number 5120 colon 1-8-01-A6 and we address this on page 38 of our brief and show how it has not been violated I would also say that it is firmly established by case law that even had there been a violation of a policy that does not necessarily equate to a constitutional violation. I take it Ms. Grigsby that it's your position that with this 14th amendment versus fourth amendment discussion you believe in this denial of medical treatment claim if that's what you want to call it that we are to examine the 14th amendment as opposed to the fourth amendment post Aldini and Burgess. Our client takes no position on that that issue because under either standard and under both standards the liability standard cannot be met. If Judge Katz was right in applying the fourth amendment then he applied the standard easiest for the plaintiff to achieve and plaintiff could not achieve it after conducting full discovery on the officer's knowledge of her condition the surrounding circumstances and any other material fact relative to evaluating their conduct. If he was wrong and the 14th amendment applies then that is the state of facts the lens through which plaintiffs prosecuted the case in the to establish their case. I would say to you that if Judge Katz erred it was harmless error and if he was correct there is no need to remand and reconsider the issues because full briefing was done. This is not a sua sponte summary judgment motion in the sense that plaintiffs were denied the opportunity to fully assemble whatever evidence they wanted to present. They had full opportunity to conduct discovery. I also think it's noteworthy though they try to argue that they should be given the opportunity to conduct more discovery. They've yet to identify a single witness who has not been deposed who could have been deposed. They have yet to identify a single question that they didn't ask that they might have asked because this is fundamentally different. This is not as if in the Yashon case in which an issue was not discussed at all. In that case there was a failure to discuss at all whether a liberty or property interest was at all. The question is whether or not the officers perceived a medical need and then if they did not the analysis ends but if they did did they respond appropriately to it. I was just going to say it's not quite whether they perceived it is whether they perceived or under all of those circumstances should have perceived. If you're really looking at the Farmer v. Brennan explanation of what that means. And under these circumstances your honor no reasonable person could conclude that Margaret Stallard presented a serious medical need. Their experts testimony self-serving opinions notwithstanding. We have a video that shows us exactly how Margaret Stallard presented at the jail on the night in question. And that video reflects that she made no complaints of illness, that she suffered no seizure, she did not vomit, she did not show bizarre behavior, she did not show breathing difficulties, she made no physical complaints, she responded negatively to a suicidal intention question, she could walk, she could talk, she could respond to commands. What about the fact that the officers at least could have realized that and at some point did realize that she had a prescription bottle that had been filled very very recently but was. They did not know the number of pills in the bottle. They are instructed that it is not their job to open bottles and they do not open bottles. So they don't know how many pills are in that bottle. So their protocol is to put those bottles in a bag, attach a note to it, and then give it to the nurse who was due to come on duty here, in this case, roughly three hours later. Do they have any responsibility or requirement to ask any questions about the prescription, to ask the detainee, you know, what is this medicine for, have you taken it recently, how much of it have you taken? In this case, the testimony of the corrections officer was that she felt that given the intoxicated state of Ms. Stallard, she would not obtain reliable information. So she did not query further, the prisoner further about the medications. But that's because she thought she was intoxicated. She thought she was intoxicated from alcohol, slurred her speech, walked with unsteady gait, but still able to speak and still able to talk and she was placed in a holding cell where she was observed sleeping soundly. And so under those circumstances there was nothing to suggest that she was she appeared to be a typical New Year's Eve intoxicated person. We are early morning hours of January 1st, 2012. So it is our position that regardless of the standard that is applied in this case, the factual record has been fully developed on the issues of the conduct of the officer and their observations. If Judge Katz was correct, the court need to affirm and doesn't necessarily have to resolve the issue in this case of what standard applies because under either standard the defense should prevail. The plaintiff also raises the argument that the protocol required that the shift supervisor be contacted, I think, and that didn't, apparently, did not happen. There was nothing here that would have been a technical reading of an internal policy that would suggest the shift supervisor should have been called. The shift supervisor would have done nothing different than what the corrections officers themselves did. She, too, would have attached those medical, put those prescription bottles in the medical bag, attached the form, and deferred to an analysis of the trained medical personnel, the nurse, as to the significance, if any, of those more senior person was not summoned, would not have changed the result. And under those circumstances, failure to summon a supervisor, we do not think, amounts to a constitutional violation in the absence of a serious medical need, which Margaret Stallard simply did not display. And, again, we would urge the court to focus on the video evidence. I mean, the instruction of the Supreme Court in the plaintiff's position contradicts the video evidence. The plaintiff's version of the facts contradicts the video evidence, and we must rely upon the video evidence. And what the officers knew, what they were informed, and, most importantly, Margaret Stallard's physical condition can be observed by looking at that video. And under those circumstances, no reasonable person would conclude that she was at imminent risk of a serious medical event a few hours later. If there are no further questions? Okay. Thank you very much. May it please the court, counsel for the Erie County defendant says that it was not their job to open pill bottles. What was their job was for a preliminary health screening to be completed by a health trained personnel at the time of booking, not three hours later when the nurse arrived. So does that failure to follow the procedure, the internal procedure of the prison, why does that rise to the level of a constitutional violation? Because the lens that the court must review this through is what is objectively reasonable under the circumstances. What's reasonable under the circumstances is stated to these particular corrections officers through their policy, and it is stated through the regulation. The regulation is picked up nationally. It's more like a uniform standard for jails nationally as described by the plaintiff's expert. The expert, the state regulation, and the incomplete lockstep. And if the the touchstone here is what's reasonable for these people to have done, they were not trained to do what's reasonable. And we haven't talked about the Monell claim, but it's stunning to see the admissions here that they were literally trained to do what they did, even though it's incorrect, and to wait for the nurse to come later. And that's the time while Margaret Stollard lay there dying. So your position would be that the Constitution requires that any time a person who appears to be obviously intoxicated is brought into the jail, there has to be a complete medical screening. No, Your Honor. No, because that may or may not be reasonable under the circumstances. The Fourth Amendment Standard, and with excessive force cases, there are any number of array of excessive force cases. But this isn't one of those. This is a question of what is reasonable under the circumstances for officers knowing what these officers knew. Right. Now, and in this case, I don't think you even need medical training to realize that an empty Xanax bottle or a nearly empty Xanax bottle is a problem. That's a red flag. I think a layperson is well within a layperson's knowledge. These guys were trained not to even make that inquiry, when a health trained person is supposed to do exactly that when someone is taken into custody. So the other... Is it a finer point that a supervisor was not called? Yeah, a supervisor definitely should have been called. I agree with opposing counsel on one point, which is that... I'm sorry, I don't know if I'm over time. You're okay. Okay. I agree with one point. Please watch the video. If I could ask you to do one thing, it would be watch the video and then read the video. I have a friend who authored or contributed to authoring a lot of the jail's policies. He says, if someone cannot stand on their own, if their speech is grossly slurred, these are things that should trigger the need for an immediate health response. So Judge Batchelder, no, it's not the case that everyone gets a medical evaluation before they're thrown into the drunk tank. It's a question of what's reasonable under the circumstances. I get the point that people will say, no, I wasn't drinking when they appear to be drunk. Not every one of them comes in with an empty prescription bottle, a nearly empty prescription bottle that was filled two days before. That is a very serious red flag that I don't even think you need health training to appreciate. Anything further? No, Your Honor. These are the reasons why we ask you to reverse and remand. Okay, thank you. Thank you for your arguments today. The case will be submitted and...